Argued and submitted May 2, affirmed August 6, 2014

R & R TREE AND LANDSCAPE, INC.,
dba R & R Tree Service,
*Petitioner,*

*v.*

DEPARTMENT OF CONSUMER
AND BUSINESS SERVICES
and SAIF Corporation,
*Respondents.*

Department of Consumer and Business Services
INS1011006; A152014

333 P3d 1089

Karen S. Varney argued the cause for petitioner. On the opening brief were Linda C. Attridge and Radler, Bohy, Replogle & Conratt, LLP. On the reply brief was William H. Replogle.

Inge D. Wells, Assistant Attorney-in-Charge, argued the cause for respondents. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

TOOKEY, J.

## TOOKEY, J.

Petitioner R & R Tree and Landscape, Inc., seeks review of a final order of the Director of the Department of Consumer and Business Services (DCBS). *See* ORS 183.480; ORS 183.482 (judicial review of final agency orders). The order upheld the results of premium audit billings issued by petitioner's workers' compensation insurer, SAIF Corporation (SAIF), for three audit periods: July 1, 2008 to July 1, 2009; July 1, 2009 to July 1, 2010; and July 1, 2010 to July 1, 2011. *See* ORS 737.318; OAR 836-043-0110 (workers' compensation premium audit program); ORS 737.505 (appeals to the director of DCBS). We affirm.

We begin by providing some background information for the discussion that follows. An employer pays workers' compensation insurance premiums based on the risk associated with its business. *Lemma Wine Co. v. Natl. Council on Comp. Ins.*, 194 Or App 371, 373-74, 95 P3d 238 (2004). Employers are assigned risk classifications based on the general nature of the business. *Id.* When an individual employee performs multiple jobs with different levels of risk, the employer can qualify for multiple classifications for that employee, provided that the employer maintains "verifiable payroll records" concerning the work that the individual employee performs. OAR 836-042-0060(1). If an employer does not maintain verifiable payroll records for an individual employee as required, "the entire payroll of the employee shall be assigned to the highest rated classification[.]" OAR 836-042-0060(3).

Under OAR 836-042-0060(4), payroll records are "verifiable" if they have the following characteristics:

"(a)   The records must establish a time basis, and the time basis must be hourly or a part thereof, daily or part thereof, weekly or part thereof, monthly or part thereof or yearly or part thereof;

"(b)   For each salaried employee, the records must also include time records in which the salary is converted to an hourly, daily, weekly, monthly or yearly rate and then multiplied by the time spent by the employee in each classification exposure;

"(c)   The records must include a description of duties performed by the employee, to enable the insurer to determine correct classification assignment. Records requiring additional explanation or interpretation are not considered to be verifiable; and

"(d)   The records must be supported by original entries from other records, including but not limited to time cards, calendars, planners or daily logs prepared by the employee or the employee's direct supervisor or manager. Estimated ratios or percentages do not comply with the requirement of this subsection and are not acceptable for verification. Verifiable records must be summarized in the insured employer's accounting records."

Thus, in order to be considered "verifiable" pursuant to the rule, payroll records must meet all of the listed characteristics.

With that context in mind, we turn to the facts of this case, which are undisputed. Petitioner is a business owned by Mr. and Mrs. Cornett. Petitioner's work includes tree pruning and lawn maintenance and, on rare occasions, other work such as masonry work and building fences. Petitioner has been audited several times in the past, and has been permitted to divide its payroll classifications between classification code 0106 (tree and shrub pruning, above ground level) and the lower-risk classification code 9102 (lawn maintenance performed from the ground level).[1]

Petitioner maintained its records as follows: Mr. Cornett kept a "daily log" of employee hours based on verbal reports from each crew at the end of each work day. For each job, Mr. Cornett would record the person or business being billed, the crew members assigned to the job, the number of hours worked per crew member, and whether the work performed was "AG" (performed "above ground") or "BG" (performed with "boots on the ground"). Mr. Cornett used the initials "AG" to designate work that was "above ground," that is, work that, in his opinion, fell within classification code 0106. He used the initials "BG" to designate work that was performed with "boots on the ground," that is,

---

[1] Petitioner was also authorized to use classification codes for "bid" work and office work; the use of those codes is not at issue in this case.

work that, in his opinion, fell within classification code 9102. Once a week, Mr. Cornett provided each employee's weekly hours to Mrs. Cornett, who input the data into QuickBooks for payroll purposes. At the end of each month, Mr. Cornett created a "monthly summary," in which he summarized each employee's hours for the month, dividing the hours between "AG" and "BG" work.

Other than designating the employees' work as "AG" or "BG," the daily log did not describe the specific duties that each employee had performed on each job. However, when petitioner would first bid on a job, it would create an invoice that provided, among other things, a general description of the services to be performed—for example, "Remove and stump grind dead cedar tree right side of home as facing," or "Trim two maple trees in front yard." By consulting the invoice generated for a particular job, one could generally determine the type of work that the employees had performed.

In August 2010, an auditor, on behalf of SAIF, issued a final premium audit billing (billing) to petitioner for the period of July 1, 2008 to July 1, 2009. As relevant to this case, the auditor determined that the records that petitioner provided for the audit did not enable him to determine the correct classification assignment and did not meet the requirements for verifiable records under OAR 836-042-0060. The auditor assigned the "vast majority of subject payroll" to the higher-risk classification code 0106, resulting in a billing of $63,397.64.

In May 2011, the auditor issued two additional billings to petitioner, for the periods of July 1, 2009 to July 1, 2010, and July 1, 2010 to January 1, 2011. Again, the auditor determined that the time records did not include a description of the work performed by employees and did not meet the requirements for verifiable time records under OAR 836-042-0060. The two audits resulted in billings of $170,465.73 and $85,300.63, respectively.

At petitioner's request, a hearing was held to review the three billings. In a proposed order, an administrative law judge (ALJ) concluded that "[petitioner's] payroll records do not satisfy the criteria for verifiable time records

set out in OAR 836-042-0060 and therefore do not support a division of payroll among class codes 0106 and 9102," and that the billings for the three audit periods were correct. Specifically, the ALJ concluded that (1) petitioner's payroll records failed to satisfy the requirements of OAR 836-042-0060(4)(c) because its "daily log contains no description of duties performed by the employee"[2]; and (2) petitioner failed to satisfy the requirements of OAR 836-042-0060(4)(d) because it "has no other contemporaneous records to establish employees' time basis and work activity" and therefore petitioner's "daily log cannot be audited for accuracy."[3] The director of DCBS (the director) issued a final order, in which he adopted and incorporated the ALJ's reasoning and conclusions of law and affirmed the billings.

Petitioner now appeals the director's final order, arguing that the director erred as a matter of law in concluding that petitioner did not maintain verifiable payroll records in accordance with OAR 836-042-0060(4).[4] Specifically, petitioner challenges the conclusion that its payroll records—consisting of petitioner's daily logs, monthly summaries, and invoices—do not satisfy the requirements

_____

[2] The ALJ appears to have determined that the invoices, which petitioner would create when it first bid on a job and would then consult to determine the type of work the employees had performed, are not part of petitioner's payroll records. The ALJ stated that, "to determine what work activity an employee performed on any given day, requires consulting the particular invoices for the jobs the employee worked," and that "[b]ecause the daily log requires additional explanation or interpretation to ascertain what duties the employee performed that day it cannot be considered as verifiable."

[3] The ALJ decided that petitioner's invoices do not satisfy the requirements of OAR 836-042-0060(4)(d) because they are not contemporaneous and they "occasionally require additional explanation or interpretation to ascertain the proper pairing with the daily log, and/or to determine the correct classification assignment for the work performed."

[4] In a second assignment of error, petitioner argues that when the rules are correctly interpreted and applied, "[t]here is no substantial evidence to support the Director's conclusion that the employer's payroll records were not verifiable and did not support a division of payroll." Under ORS 183.482(8)(c), this court "shall set aside or remand the order if the court finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." However, petitioner does not challenge the director's findings of fact; instead, petitioner argues that there is no substantial evidence to support the director's legal conclusion that the payroll records were not "verifiable." In effect, petitioner makes the same argument in both assignments of error; thus, we do not address each assignment of error separately.

of OAR 836-042-0060(4)(c) and (d). According to petitioner, the daily logs together with the invoices "include a description of duties performed" sufficient to satisfy the requirements of OAR 836-042-0060(4)(c), and the daily logs include original entries created by a manager, sufficient to satisfy the requirements of OAR 836-042-0060(4)(d). In addition, petitioner argues that because the director has previously issued an order stating that petitioner maintained verifiable records—and this court upheld that order in *R & R Tree Service, Inc. v. SAIF*, 251 Or App 735, 286 P3d 1232 (2012) (*R & R I*)—the director erred when it concluded otherwise in this case.

Respondents DCBS and SAIF respond that petitioner's payroll records fail to satisfy the requirements of both OAR 836-042-0060(4)(c) and (d). First, respondents argue that petitioner's invoices are not payroll records, and that, even if they are considered part of petitioner's payroll records, the records do not include a description of duties performed that is sufficient "to enable the insurer to determine correct classification assignment" without "additional explanation or interpretation," as required by OAR 836-042-0060(4)(c). Second, respondents argue that petitioner's daily logs do not satisfy OAR 836-042-0060(4)(d) because they are not filled out by a "direct supervisor or manager."

We review an agency's conclusions for legal error. ORS 183.482(8)(a). As an initial matter, we address petitioner's argument that our previous decision in *R & R I* controls the outcome of this case. Following an audit for the period of July 1, 2007 to June 30, 2008, the director concluded that petitioner had not met its burden of proof in support of a different or divided classification under OAR 836-042-0060. *R & R I*, 251 Or App at 739. We noted that "[a] significant focus of petitioner's three assignments of error is on whether the director of DCBS erred in concluding that petitioner's records were not 'verifiable' payroll records, as defined in OAR 836-042-0060(4)." *Id.* at 739-40. However, we determined that "the ALJ and the director concluded that, although petitioner's records were 'verifiable,' they were insufficient to 'disclose a specific allocation for each such individual employee,' OAR 836-042-0060(1)[.]" *Id.* at 740. Thus, the "petitioner's challenge to the final order based

on its maintenance of 'verifiable' records [was] unavailing." *Id.* Ultimately, we concluded that there was sufficient evidence to support the director's determination that, based on the extent of the errors that the audit had revealed, "the verifiable time records were not sufficient to justify a division between two codes." *Id.* at 743.

Petitioner "interprets this court's decision in [*R & R I*] to be that the ALJ and the Director concluded the payroll records maintained by [petitioner] were verifiable * * * and the Director's Order was supported by substantial evidence." According to petitioner, "[p]ayroll records maintained in the same way by the same person and [previously] found to be verifiable by the auditor, the ALJ, the Director, and this Court should continue to be found verifiable in a subsequent audit, absent any rule change."

We disagree with petitioner's interpretation of *R & R I.* The issue in that case was not whether the payroll records were verifiable under OAR 836-042-0060(4), but whether, given the errors revealed by the audit, the records were sufficient to "disclose a specific allocation for each such individual employee," under OAR 836-042-0060(1). We rejected the petitioner's argument that the director had erred by concluding that the payroll records were not "verifiable," because the director had made no such conclusion. Thus, we did not reach the merits of the petitioner's argument regarding that issue. Indeed, we noted that, "in any event, the spreadsheets that [the] petitioner maintained were not supported by original time cards or other work logs prepared by the employees or the employees' direct supervisor. *See* OAR 836-042-0060(4)(d)." *Id.* at 740 n 5. Although that comment was *dictum*, it contradicts petitioner's contention in this case that its payroll records were previously "found to be verifiable by * * * this Court."

We now turn to the parties' arguments regarding OAR 836-042-0060(4)(c) and (d). As noted, OAR 836-042-0060(4)(c) states that "[t]he records must include a description of duties performed by the employee, to enable the insurer to determine correct classification assignment. Records requiring additional explanation or interpretation are not considered to be verifiable[.]" OAR 836-042-0060(4)(d)

requires that "[t]he records must be supported by original entries from other records * * * prepared by the employee or the employee's direct supervisor or manager."

Petitioner asserts that "[i]t is the invoices which are part of [petitioner's] payroll records, *taken together with the daily log's classification of the work* as ["AG" or "BG"], that provides a description of the duties performed by the employee sufficient" to satisfy OAR 836-042-0060(4)(c). (Emphasis added.) Petitioner then argues that the daily logs satisfy the requirements of OAR 836-042-0060(4)(d). However, even assuming—without deciding—that petitioner's daily logs and invoices satisfy the requirements of OAR 836-042-0060(4)(c), those records "must be supported by original entries from *other records.*" OAR 836-042-0060(4)(d) (emphasis added). Thus, the daily log cannot satisfy both the requirements of OAR 836-042-0060(4)(c) and OAR 836-042-0060(4)(d). Petitioner has failed to point to any "original entries from other records" that support its payroll records, regardless of whether the payroll records consist of the daily logs by themselves or the daily logs taken together with the invoices.[5] Accordingly, we conclude that the requirements of OAR 836-042-0060(4)(d) have not been met.

Petitioner failed to maintain verifiable payroll records, as required by OAR 836-042-0060(1), because its payroll records were not "supported by original entries from other records," as required by OAR 836-042-0060(4)(d). Thus, the director did not err when it upheld the three billings at issue in this case.

Affirmed.

---

[5] At oral argument, petitioner argued for the first time that the invoices, by themselves, satisfy the requirements of OAR 836-042-0060(4)(c), and the daily logs satisfy the requirements of OAR 836-042-0060(4)(d). Even were we to consider that argument, petitioner has failed to explain how the invoices, without more, provide "a description of duties performed by the employee, to enable the insurer to determine correct classification assignment" without "requiring additional explanation or interpretation." OAR 836-042-0060(4)(c).